UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

      Plaintiff,

vs.                                                                                                       No. 17-CR-3402 MV

CHRIS BANDY,

      Defendant.

## MEMORANUM OPINION AND ORDER

**THIS MATTER** is before the Court on Defendant Chris Bandy's Motion to Dismiss the Indictment. Doc. 119. The Government filed a response in opposition [Doc. 134] and Mr. Bandy filed a reply [Doc. 157]. Having reviewed the briefs, exhibits, relevant law, and being otherwise fully informed, the Court finds that the motion is not well-taken and will be **DENIED**.

## BACKGROUND

In a single-count indictment returned on December 5, 2017, Mr. Bandy was charged with Stalking in violation of 18 U.S.C. § 2261A(2)(B). Doc. 2. The Indictment alleges that between December 9, 2016 and February 3, 2017, Mr. Bandy,

> with the intent to harass and intimidate Jane Doe, knowingly used facilities of interstate and foreign commerce, including the Internet, Twitter, and electronic mail, all interactive computer services and electronic computer services of interstate commerce, to engage in a course of conduct that caused, attempted to cause, and would reasonably be expected to cause substantial emotional distress to Jane Doe.[1]

Doc. 2 at 1. The charging language largely tracks the statutory language found in § 2261A(2)(B), commonly known as the cyberstalking statute. *See, e.g., United States v. Traficante*, 966 F.3d 99, 101 (2d Cir. 2020).

---

[1] In this opinion, the Court will refer to Jane Doe as "M.D."

1

The Indictment followed Mr. Bandy's alleged use of interactive and electronic computer services to send five emails and multiple tweets describing graphic sexual content attributed to M.D. Doc. 119 at 1–3. M.D. was the Senior Vice President of Human Resources who oversaw Mr. Bandy's termination from his employment at Nusenda Credit Union (Nusenda) as an information technology (IT) specialist. Doc. 78 at 2–3. The emails were sent to M.D. and to other employees at Nusenda from various email accounts, including one impersonating another former manager at Nusenda ("Andy"). *Id*. at 6–10. Several of the communications suggested that M.D. was under surveillance and many referenced individuals employed at Nusenda. *Id.* Examples of the language in the emails and tweets include:

> "Watching you shave this morning … you are the best pole dancing whore of all time."
>
> "Look forward to see you masturbating"
>
> "[M.D.'s] husband hasn't had a good fuck in years because her pussy is as closed as her mind."
>
> "Do you still wax everything down under and leave that little patch in the front."
>
> "Well Andy's watching you."
>
> "The camera in your shower was a beautiful picture this morning. Watching you rub a dub dub all of the parts."
>
> "Is that thong stretched tight across your pole dancing asshole? Watching you all day is real entertaining. Andy will see you soon."
>
> "Are you wet right now? Can everyone in the office smell you right now? Andy is coming to see you tomorrow. Be on the lookout."
>
> "Just so you know he has his eye on you."
>
> "[W]atching you walk in this morning made Andy horny."
>
> "Andy loves watching you."

Doc. 119 at 1–3; Doc. 134 at 5.

In the instant motion, Mr. Bandy asks the Court to dismiss the indictment because "18 U.S.C. § 2261A(2)(B) violates the First and Fifth Amendments of the United States Constitution." Doc. 119 at 1. More specifically, Mr. Bandy argues that (1) the statute is substantially overbroad and criminalizes speech that does not serve a compelling government interest, (2) the indictment criminalizes protected speech in a manner that runs afoul of strict scrutiny, and (3) the statute is unconstitutionally vague. *See generally* Doc. 119. He argues that the Supreme Court has carved out very limited classes of speech that are unprotected—obscenity, defamation, fraud, incitement, true threats, and speech integral to criminal conduct. *Id*. at 4–5. Additionally, he notes that a law regulating unprotected speech can be overbroad if it touches upon protected speech, and he asserts that § 2261A(2)(B) does precisely this. *Id*. at 5, 8. Mr. Bandy further argues that the Supreme Court has held that speech cannot be punished solely because it "may have an adverse emotional impact upon the audience." *Id.* at 7 (citing *Hustler Magazine, et al. v. Falwell*, 485 U.S. 46, 55 (1988). He asserts that § 2261A(2)(B) is facially invalid because it encompasses more speech than threats, which are unprotected, and that it unconstitutionally punishes protected speech based on its content. *Id.* at 10. Even if § 2261A(2)(B) is not facially invalid, Mr. Bandy argues that in this case it is unconstitutional to indict him under the statute because the communications he allegedly sent are "neither defamatory nor obscene," do not incite violence or fraud, and do not contain any threats to M.D.'s physical safety. *Id.* at 11. Finally, he asserts that the statute is unconstitutionally vague under the Fifth Amendment because it does not provide fair warning of the conduct it prohibits and creates a risk of arbitrary enforcement. *Id.* at 14.

In response, the Government submits that the indictment is legally sufficient because it properly alleges that Mr. Bandy committed each of the essential elements of the crime charged. Doc. 134 at 6. The Government notes the claim that § 2261A(2)(B) is constitutionally overbroad

has been "universally rejected as meritless." *Id*. at 7, 8–10.  Additionally, the Government asserts that the statute is not overbroad as applied to the facts of this case, as the electronic communications specifically targeted M.D., a private person who has never been a public figure. *Id*. at 13.  These communications were "explicitly defamatory and libelous in their entirety without serving any recognized public interest." *Id.*  The Government also submits that a strict scrutiny analysis is not appropriate under the law, as § 2261A(2)(B) is a conduct-based statute (rather than content-based) and these communications are not protected speech under the First Amendment. *Id.* at 16.  And even under strict scrutiny, the Government asserts that it has a compelling and legitimate interest in preventing the harassment of individuals.  *Id.* at 17–18.  Next, the Government argues that a "fair reading" of the communications Mr. Bandy allegedly sent to M.D., taken as a whole, is consistent with the messages being obscene and defamatory.  *Id.* at 19.  The messages also have "a threatening character" because Mr. Bandy "threatened [M.D.] in ominous, frightening and escalating terms with the real possibility that he was surveilling her, watching her and that implicitly (and overtly) that he had marked her as prey for a reckoning sexual assault." *Id.* at 20.  Finally, the Government states that the statute is not unconstitutionally vague under the Fifth Amendment and notes that this argument has been "summarily rejected" by the courts that have analyzed § 2261A(2)(B) for vagueness.  *Id.* at 22 (citing *United States v. Osinger*, 753 F.3d 939, 945 (9th Cir. 2014); *United States v. Conlan*, 786 F.3d 380, 386 (5th Cir. 2015)).

In his reply, Mr. Bandy asserts that his speech has been unconstitutionally prohibited "simply because society finds [it] offensive or disagreeable."  Doc. 157 at 1 (citing *Texas v. Johnson*, 491 U.S. 397, 414 (1989)).  He argues again that § 2261A(2)(B) is overbroad both facially and as applied in his case, and he maintains that the communications are not obscene, defamatory, or integral to criminal conduct. *Id.* at 5, 8, 11, 15.  Mr. Bandy also maintains that

§ 2261A(2)(B) does not pass strict scrutiny.  He argues that there is not a compelling governmental interest in protecting individuals from fear, abuse, or annoyance because in this case, the victim "could have deleted the communication, blocked future communications, or applied technological filters to prevent further contact." *Id.* at 19.  Accordingly, he requests that the Court dismiss the indictment.

## STANDARD

### I. Rule 12

Rule 12(b)(3)(B) of the Federal Rules of Criminal Procedure lists a number of grounds upon which a defendant can challenge his indictment prior to trial, including that the indictment joins two or more offenses in the same count (duplicity), charges the same offense in more than one count (multiplicity), lacks specificity, or fails to state an offense.  Fed. R. Crim. P. 12(b)(3)(B). The Tenth Circuit has stated that "[a]n indictment is sufficient if it sets forth the elements of the offense charged, puts the defendant on fair notice of the charges against which he must defend, and enables the defendant to assert a double jeopardy defense."  *United States v. Dashney*, 117 F.3d 1197, 1205 (10th Cir. 1997).  Challenging an indictment is not a means of "testing the strength or weakness of the government's case, or the sufficiency of the government's evidence." *United States v. Todd*, 446 F.3d 1062, 1067 (10th Cir. 2006) (citing *United States v. Hall*, 20 F.3d 1084, 1087 (10th Cir. 1994)).  Rather, "[a]n indictment should be tested solely on the basis of the allegations made on its face, and such allegations are to be taken as true." *Todd*, 446 F.3d at 1067. Courts should therefore avoid considering evidence outside of the indictment when testing the indictment's legal sufficiency.  *Id*.  The Tenth Circuit has recognized a "rare exception" to this rule, however, where "the operative facts are undisputed" and those undisputed facts show that "as

a matter of law, the Defendant could not have committed the offense for which he was indicted." *Id*. at 1068.

## II. First Amendment Overbreadth Challenges

The First Amendment states in part, "Congress shall make no law ... abridging the freedom of speech." U.S. Const. amend. I. The First Amendment overbreadth doctrine ensures that lawmakers are precise in drafting statutes that target unprotected speech so as not to infringe on speech that is constitutionally protected. *See Nat'l Ass'n for Advancement of Colored People v. Button*, 371 U.S. 415, 432 (1963). The overbreadth doctrine authorizes "the facial invalidation of laws that inhibit the exercise of First Amendment rights if the impermissible applications of the law are substantial when judged in relation to the statute's plainly legitimate sweep." *City of Chicago v. Morales*, 527 U.S. 41, 52 (1999). "Facial challenges, ... including those based on overbreadth, 'are disfavored for several reasons,'" including concerns that such challenges counteract principles of judicial restraint and separation of powers. *United States v. Brune*, 767 F.3d 1009, 1018 (10th Cir. 2014), *cert. denied*, 135 S.Ct. 1469 (2015) (quoting *Washington State Grange v. Washington State Repub. Party*, 552 U.S. 442, 450 (2008)). As a result, the overbreadth doctrine "has been employed ... sparingly and only as a last resort." *Brune*, 767 F.3d at 1019 (quoting *Broadrick v. Oklahoma*, 413 U.S. 601, 613 (1973)).

In order to succeed in a facial overbreadth challenge, which invalidates all enforcement of the law, "a challenger 'must show that the potential chilling effect on protected expression is 'both real and substantial.'" *Brune*, 767 F.3d at 1018 (quoting *Jordan v. Pugh*, 425 F.3d 820, 828 (10th Cir. 2005)). "Finding *some* overbreadth only satisfies part of the inquiry, as the challenger must also show that the 'law punishes a substantial amount of protected free speech, judged in relation to the statute's plainly legitimate sweep.'" *Brune*, 767 F.3d at 1018 (quoting *Virginia v. Hicks*, 539

U.S. 113, 118–19 (2003)). "[E]ven where a fair amount of constitutional speech is implicated, [the courts] will not invalidate the statute unless significant imbalance exists." *Id.*

By contrast to a facial overbreadth challenge, an as-applied overbreadth challenge concedes that the statute may be constitutional in many of its applications but contends that it is not so under the particular circumstances of the case. *See N.M. Youth Organized v. Herrera*, 611 F.3d 669, 677 n. 5 (10th Cir. 2010). An as-applied challenge requires only that the law is unconstitutional as applied to the challenger's case; a facial challenge requires this showing as well, but also requires that there is no other theoretical set of circumstances in which the law could be constitutionally applied. *See United States v. Salerno*, 481 U.S. 739, 745 (1987). "A successful as-applied challenge is, thus, a necessary, but not sufficient, ingredient to a successful facial challenge." *United States v. Streett*, 434 F. Supp. 3d 1125, 1171–72 (D.N.M. 2020). The Supreme Court has instructed courts facing simultaneous as-applied and facial challenges to first resolve the as-applied challenge before addressing the facial challenge in order to avoid "proceed[ing] to an overbreadth [facial] issue unnecessarily." *See Bd. of Trustees of State Univ. of N.Y. v. Fox*, 492 U.S. 469, 484–85 (1989).

### III.     Fifth Amendment Vagueness Challenges

The void-for-vagueness doctrine requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement. *United States v. Gaudreau*, 860 F.2d 357, 359 (10th Cir. 1988) (citing *Kolender v. Lawson*, 461 U.S. 352, 357 (1983)). Criminal statutes must be more precise than civil statutes because the consequences of vagueness are more severe. *Id.* A law can be unconstitutionally vague on its face or in application. *See United States v. Rodebaugh*, 798 F.3d 1281, 1294 (10th Cir. 2015). "A statute can be

impermissibly vague for either of two independent reasons. First, if it fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits. Second, if it authorizes or even encourages arbitrary and discriminatory enforcement." *Id.* at 1295 (quoting *Jordan*, 425 F.3d at 824–25 and *Hill v. Colorado*, 530 U.S. 703, 732 (2000)). "One to whose conduct a statute clearly applies may not successfully challenge it for vagueness." *Id.* (quoting *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 496 n.7 (1982)). An as-applied challenge fails when a defendant has knowledge of the illegality of his activities. *Id.*

## DISCUSSION

### I. Overbreadth Challenge

Mr. Bandy argues that § 2261A(2)(B) is overbroad both facially and as applied to him because it serves to criminalize speech that he asserts is protected. Doc. 119 at 4, 11. Because the Supreme Court has instructed that lower courts facing simultaneous as-applied and facial challenges to first resolve the as-applied challenge before addressing the facial challenge, the Court will start by addressing Mr. Bandy's as-applied challenge. *Fox*, 492 U.S. at 484–85.

When considering an as-applied challenge, a court considers the challenged statute "in light of the charged conduct." *United States v. Franklin–El*, 554 F.3d 903, 910 (10th Cir. 2009); *see also Galbreath v. City of Okla. City*, 568 Fed. Appx. 534, 539 (10th Cir. 2014) (for an as-applied challenge, courts "must tether our analysis to the factual context in which the ordinance was applied"). 18 U.S.C. § 2261A was enacted in 1996 after the Congress realized that the Violent Crime Control and Law Enforcement Act of 1994 did not address cases in which the victim was unrelated to their stalker. *See United States v. Cook*, 472 F. Supp. 3d 326, 331 (N.D. Miss. 2020). A content-based restriction on protected speech must survive strict scrutiny. *See United States v. Playboy Entm't Grp., Inc.*, 529 U.S. 803, 813 (2000). But if the law is "unrelated to the content

of speech,"—i.e. content-neutral—then it only need survive an intermediate level of scrutiny as these types of regulations "pose a less substantial risk of excising certain ideas or viewpoints from the public dialogue." *Turner Broad. Sys., Inc. v. FCC*, 512 U.S. 622, 642 (1994). By its own text, § 2261A(2)(B) regulates conduct, not content—specifically, "a course of conduct" that "causes, attempts to cause or would reasonably be expected to cause substantial emotional distress." § 2261A(2)(B). Although the Tenth Circuit has not addressed the First Amendment implications of the statute, other circuit courts have rejected overbreadth challenges against § 2261A because it is "directed toward courses of conduct, not speech, and the conduct it proscribes is not necessarily associated with speech." *Osinger*, 753 F.3d at 944 (quoting *United States v. Petrovic*, 701 F.3d 849, 856 (8th Cir. 2012)). The Ninth Circuit noted that the statute targets harassing and intimidating conduct, which is not protected by the First Amendment. *Id.* The First Circuit has also rejected several First Amendment challenges to cyberstalking under § 2261A(2), holding in one case that to the extent a defendant's course of conduct targeting Jane Doe did involve speech, such speech was not protected. *United States v. Sayer*, 748 F.3d 425 (1st Cir. 2014); *see also United States v. Ackell*, 907 F.3d 67, 70 (1st Cir. 2018).

Mr. Bandy argues that § 2261A(2)(B) criminalizes speech, not conduct, because here it is being used to prosecute him based on the content of his alleged communications. Doc. 119 at 10, Doc. 157 at 4. He argues that the Supreme Court's expressive conduct cases confirm that this is a content-based regulation, pointing to *Johnson*, 491 U.S. at 406 (holding that prosecuting an individual for burning the American flag targets conduct, but is nevertheless an invalid regulation of protected speech) and *Cohen v. California*, 403 U.S. 15, 18 (1971) (holding that a prosecution for wearing a jacket proclaiming "Fuck the Draft" in a courthouse was not targeting conduct, but rather was unconstitutionally targeting speech). Doc. 157 at 4–5. But those cases are distinct from

Mr. Bandy's situation: he was not making a statement about a matter of national political significance, and the subject matter of his communications did not revolve around public discourse on a social, political, or religious issue. *Johnson* and *Cohen* involved individuals making public statements outside of a political convention and in a courthouse; Mr. Bandy's statement, by contrast, involved the alleged email communications that were narrowly targeting M.D. and her immediate management team. As the First Circuit notes, "it has never been deemed an abridgement of freedom of speech or press to make a course of conduct illegal merely because the conduct was in part initiated, evidenced, or carried out by means of language, either spoken, written, or printed." *Sayer*, 748 F.3d at 433 (citing *Giboney v. Empire Storage & Ice Co.*, 336 U.S. 490, 502 (1949)).

Mr. Bandy also points to *Cook*, 472 F. Supp. 3d at 332, in which the Northern District of Mississippi held that an individual was being prosecuted under § 2261A(2)(B) solely based on the content of his public Facebook posts, not his conduct in the act of posting. Doc. 119 at 10 n. 2. Accordingly, the application of the statute was unconstitutional as applied to the defendant as a prohibited restriction of content-based free speech. *Cook*, 472 F. Supp. 3d at 339. *Cook* is distinguishable from Mr. Bandy's situation, however, as it involved public Facebook postings targeted at public figures, including law enforcement officials, prosecutors, and judges. *See id.*, 472 F. Supp. 3d at 328. While Mr. Bandy's posts on Twitter would similarly be considered public discourse, his email communications were private and were sent specifically to M.D., certain Nusenda employee, and management team members. Doc. 78 at 27. M.D. is a private individual, and she has never been a public figure in any sphere of life. Unlike the underlying facts in *Cook*, Mr. Bandy is not being prosecuted for the *content* of these emails, but for his *conduct* in sending ominous, continuous electronic communications that "caused, attempted to cause, and would

reasonably be expected to cause substantial emotional distress." Doc. 2 at 1. The statute is not criminalizing transmission of communications that could be seen simply as annoying or insulting, but those that are made with the *intent* to intimidate, harass, or injure. *See United States v. Moreland*, 207 F. Supp. 3d 1222, 1229 (N.D. Okla. 2016) (finding that § 2261A(2)(B) is not facially overbroad and does not wrongfully infringe on protected speech).

As applied to Mr. Bandy in light of the charged conduct, § 2261A(2)(B) does not serve to criminalize protected speech. The statute is not related to Mr. Bandy's communicative content or viewpoint, and accordingly it is subject to an intermediate level of scrutiny. *Turner*, 512 U.S. at 642. "Government regulation of expressive activity is content neutral so long as it is justified without reference to the content of the regulated speech." *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989) (quotation and internal citation omitted). Under intermediate scrutiny, a law will be upheld if it "(1) serves a substantial government interest and (2) is 'narrowly drawn' to serve that interest 'without unnecessarily interfering with First Amendment freedoms.'" *Am. Target Adver., Inc. v. Giani*, 199 F.3d 1241, 1247 (10th Cir.2000) (quoting *Vill. of Schaumburg v. Citizens for a Better Env't*, 444 U.S. 620, 637 (1980)). In its response to Mr. Bandy's assertion that strict scrutiny was the proper standard, the Government argued that it has a compelling state interest in preventing the harassment of individuals by the use of electronic communications. Doc. 134 at 18. Here, intermediate scrutiny is the appropriate standard, and the Government need only have a substantial interest to support the law. Indeed, there is a substantial government interest in ensuring that private victims are not targeted with harassing and intimidating electronic communications that are reasonably expected to cause substantial emotional distress. *See, e.g. United States v. Lampley*, 573 F.2d 783, 787 (3d. Cir. 1978) (holding that Congress had a compelling interest in preventing harassing telephonic communications); *Thorne v. Bailey*, 846

11

F.2d 241, 243 (4th Cir. 1988) (same). Additionally, § 2261A(2)(B) is narrowly tailored in that a conviction under the statute requires proof beyond a reasonable doubt that a defendant acted with the *intent* to "kill, injure, harass, intimidate, or place under surveillance" and "causes, attempts to cause, or would be reasonably expected to cause substantial emotional distress." § 2261A(2)(B). These intent and harm requirements narrow the range of conduct that the statute covers, which also mitigates an overbreadth challenge. *See Osborne v. Ohio*, 495 U.S. 103, 115 (1990). Accordingly, the statute is not overbroad as applied to Mr. Bandy.

Because the § 2261A(2)(B) is constitutional as applied to Mr. Bandy, the Court need not consider whether it is facially overbroad. *See Salerno*, 481 U.S. at 745 ("A facial challenge to a legislative Act is, of course, the most difficult challenge to mount successfully, since the challenger must establish that no set of circumstances exists under which the Act would be valid."); *Streett*, 434 F. Supp. 3d at 1171–72 (holding that a successful as-applied overbreadth challenge is a necessary ingredient to a successful facial overbreadth challenge."

## II. Vagueness Challenge

Mr. Bandy asserts that § 2261A(2)(B) is unconstitutionally vague because it requires courts to estimate the amount of emotional distress that the crime poses, as well as the amount of emotional distress required to be substantial. Doc. 119 at 15. He argues that this takes imagination and speculation, and that this is the type of indeterminacy that the Supreme Court found unconstitutional in *Johnson v. United States*. *Id*. at 16 (citing 576 U.S. 591 (2015) (invalidating the Armed Career Criminal Act's residual clause)). However, courts have rejected similar arguments relating to the statute. *See United States v. Shrader*, 675 F.3d 300 (4th Cir. 2012) (holding that the statute is not unconstitutionally vague, despite its failure to explicitly define the operative terms "harass" or "intimidate"); *Osinger*, 753 F.3d at 945 (the Ninth Circuit upholding

the statute against a vagueness challenge and noting that "harass" and "substantial emotional distress" are not esoteric or complicated terms devoid of common understanding); *Petrovic*, 701 F.3d at 945 (same); *Sayer*, 748 F.3d at 434–36 (the First Circuit upholding § 2261(A)(2)(A) and noting that the term "substantial emotional distress" is understood in context and should not be interpreted in isolation to the rest of the statute).

Mr. Bandy attempts to distinguish these cases by pointing to the fact they were decided before *Johnson*, and he argues that a constitutional vagueness test must now determine whether the statute creates more unpredictability and arbitrariness then determinacy.  Doc. 119 at 16. However, this argument is undermined by the fact that the courts to consider the issue have unilaterally held that the understanding of terms like "harass," "injure" and "substantial emotional distress" are not so complicated as to escape common understanding.  *Id.*; *United States v. Conlan*, 786 F.3d 380, 386 (5th Cir. 2015) ("The statute need not define "harass" and "intimidate" because they are not obscure words and are readily understandable by most people.").  Mr. Bandy states because these terms are unclear, "the statute fails to warn a speaker of what is prohibited."  Doc. 119 at 17.  This argument has already been rejected, and courts have maintained that the statute's required conduct element combined with the specific intent element eliminate the risk of vagueness.  *Moreland*, 207 F. Supp. 3d at 1230; *Shrader*, 675 F.3d at 311; *Osinger*, 753 F.3d at 945.

Section 2261A(2)(B) contains a specific intent requirement and requires a course of conduct.  This eliminates the concern that individuals will be left wondering whether their actions will lead to criminal liability.  *See Shrader*, 675 F.3d at 311 ("Given that the government must prove both intent and effect, we need not worry that the statute sets an unclear trap for the unwary."); *Moreland*, 207 F. Supp. 3d at 1230 (the course-of-conduct element "combined with the

statute's intent element, eliminates a risk of conviction for some unknowing or accidental transmission of merely insulting or annoying communications"). Accordingly, the statute is not unconstitutionally vague.

## CONCLUSION

For the reasons stated above, Mr. Bandy's Motion to Dismiss the Indictment [Doc. 119] is hereby **DENIED.**

Dated this 9th day of March, 2021.

_____
MARTHA VAZQUEZ
UNITED STATES DISTRICT JUDGE